**M. & M. TRANSP. CO. v. COCHRAN et al.**

**No. 3352.**

Circuit Court of Appeals, First Circuit.

Dec. 6, 1938.

Wm. A. Gunning, of Providence, R. I., for appellant.

John W. Baker and Henshaw, Lindemuth & Baker, all of Providence, R. I., (Benjamin F. Lindemuth, of Providence, R.I., on the brief), for appellees.

Before BINGHAM and WILSON, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge.

Two actions at law consolidated in this court, were brought to recover for injuries to person and damages to property resulting from a collision between two motor trucks on a Massachusetts highway. In the 4th Count of their declarations, the plaintiffs, appellees, allege that the defendant, appellant, through its servants and agents, operated defendant's "motor truck wantonly, wilfully, recklessly, and with complete indifference to the rights, safety, security and welfare of other persons on said highway," including the plaintiffs.

The jury returned verdicts in favor of the defendant on the first three counts of the declarations, alleging negligence, but found for the plaintiffs on the 4th Count. The errors assigned relate to certain requests for instructions granted by the trial judge and to his refusal to direct a verdict

for the defendant on the 4th Count of the declarations. If this motion for a directed verdict should have been allowed, it will not be necessary to consider the other assignments of errors. Therefore, that question will be first considered. The facts which the jury might have found from the evidence, and the reasonable inferences to be deduced therefrom, are that on Monday, November 16, 1936, the plaintiff Cochran was operating a truck on the highway in the town of Sharon in this Commonwealth. He was proceeding southwesterly on his way from Boston to Providence. As he was descending a grade near the town line where there was a deep valley, his engine failed. He coasted to the bottom of the hill, to a point a few feet beyond where the down-grade ends and the up-grade begins, where he stopped his truck in the right lane of a 4-lane road, the left wheel being about two feet from the line between that lane and the one adjoining on the left.

After ascertaining the cause of his engine trouble, Cockran decided to await the coming of his brother, who was following him with another truck on the way to Providence. Cochran tried to set flares in the rear of the stalled truck, but was unable to light them. He was sitting in the cab of his vehicle when the defendant's truck, heavily loaded, came along and collided with the rear end of the parked truck. The operator of the defendant's truck was killed, and Cochran was thrown to the ground and injured. Both trucks caught fire and both were consumed. The plaintiff's truck was a van type, the top and rear covered with dark brown canvas covering. The front lights, and at least one of the rear lights, were on.

The collision took place at 8:45 o'clock P. M. The night was moonless; the road was straight and not lighted; and no dwellings were near. Shortly before the collision a truck, going in the same direction, stopped by the plaintiffs' car, and then proceeded on its way. A Plymouth sedan had passed the defendant's truck about a mile-and-a-half north-east of the point of collision. Its operator narrowly escaped a collision with the plaintiffs' truck. A Mr. Schwartzler was driving in the opposite direction. He saw the defendant's truck at it came down the hill, saw the collision and stopped near the scene of the accident.

Aside from what might be inferred from the force of the impact between two heavily loaded trucks, the only evidence on the question of speed was that of the operator of the Plymouth sedan, who testified he was going 45 or 50 miles an hour when he passed defendant's truck, and the testimony of Schwartzler to the effect that he was going slower than the defendant's truck, but how fast Schwartzler's car was going was not shown.

The question arises whether the jury were warranted in finding wilful and wanton disregard of the rights of others, as alleged in the 4th Count of plaintiffs' declarations. There was no evidence bearing directly upon the conduct of the operator of the defendant's truck prior to the collision. The jury, therefore, had to proceed upon inferences properly drawn from the evidence adduced. They could have inferred that the operator was driving at an excessive rate of speed, or that he was not looking ahead, or that he did not realize that the defendant's truck was standing, until too late to pass it without a collision. These inferences, or any combination of them, would have warranted a finding of negligence, even to the degree of gross negligence. The question presented is whether these inferences, under all the circumstances of the case, would warrant a finding of wilful, wanton and reckless conduct. If they did not, the defendant's motions for a directed verdict should have been granted. We think the denial of the motions was error. A distinction between negligence, ordinary or gross, and wilful and reckless conduct, has been recognized in a line of Massachusetts cases, holding that the difference is not one of degree but a difference in kind. Aiken v. Holyoke Street Railway Co., 184 Mass. 269, 271, 68 N.E. 238; Banks v. Braman, 188 Mass. 367, 369, 74 N.E. 594; Cotter v. Boston, Revere Beach & Lynn Railroad Co., 237 Mass. 68, 129 N.E. 426; Prondecka v. Turners Falls Power & Elec. Co., 238 Mass. 239, 130 N.E. 386; McIntyre v. Converse, 238 Mass. 592, 594, 131 N.E. 198.

In Aiken v. Holyoke Street Railway Co., supra, the court said [page 239]:

"The difference in rules applicable to the two classes of cases results from the difference in the nature of the conduct of the wrongdoers in the two kinds of cases. In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a willful, intentional wrong. His conduct is criminal or. quasi criminal. * * * The law is regardful of human life and personal safety, and, if one is grossly and wantonly reckless in exposing

others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a willful and intentional wrong."

In Banks v. Braman, supra, it was observed:

"In one case there need be nothing more than a lack of ordinary care, which causes an injury to another. In the other case there is willful, intentional conduct whose tendency to injure is known, or ought to be known, accompanied by a wanton and reckless disregard of the probable harmful consequences from which others are likely to suffer, so that the whole conduct together is of the nature of a willful, intentional wrong."

■ Excessive speed, without more, would not justify a finding of wanton and wilful misconduct (Dean v. Bolduc, Mass., 4 N. E.2d 441; Kohutynski v. Kohutynski, Mass., 5 N.E.2d 345; Commonwealth v. Arone, 265 Mass. 128, 163 N.E. 758) ; nor would it if coupled with a failure of the operator to see the plaintiffs' truck and to realize that it was not moving until too late to avoid the collision. He was not bound to know, or anticipate, that in this partially settled region a truck would be parked in the road. While it is never safe to assume that the road is free of obstructions so as to relieve one of the necessity of watching the road ahead of him, yet failure to do so, under the circumstances shown to exist in this case, could be deemed to be no more than negligence, either ordinary or gross. One, driving at a high rate of speed anywhere, is confronted with the possibility that a pedestrian, or motor vehicle, may emerge from an intersecting public or private way so suddenly that an accident is unavoidable. That was the situation in Kohutynski v. Kohutynski, supra, where the Massachusetts court held that the trial judge should have directed a verdict for the defendant on a count alleging wilful, wanton or reckless conduct. In that case, there was affirmative evidence tending to show that the driver of the defendant's car was exceedingly careless in the operation of it.

■ It may be readily conceded that the ultimate question, whether the defendant's driver was guilty of wanton, intentional disregard of the rights of others, is a question of fact, but in the Federal courts there is "a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Pleasants v. Fant, 22 Wall. 116, 120, 121, 22 L. Ed. 780; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Pennsylvania Railroad Co. v. Chamberlain, 288 U. S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819.

In Pennsylvania Railroad Co. v. Chamberlain, supra, the court observed [page 395]:

"The rule is settled for the federal courts, and for many of the state courts, that whenever in the trial of a civil case the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. Such a practice, this court has said, not only saves time and expense, but 'gives scientific certainty to the law in its application to the facts and promotes the ends of justice.' "

In the same case the court further stated that the scintilla rule had long since been rejected in the Federal court.

■ Whether the operator of defendant's truck was guilty of a wilful and intentional wrong must necessarily depend upon whether and when he became aware that the plaintiffs' truck was standing in the highway. This was wholly a matter of speculation. In the cases relied upon by the plaintiffs, there was evidence bearing upon the conduct, at the time of the accident, of the party held responsible for it. His acts were not left wholly to conjecture. In this respect these cases are distinguishable from the cases at bar. Taking all the evidence in its most favorable aspect for the plaintiffs, we think there is no support in the record for the verdicts.

As above indicated, the conclusion which we have reached renders unnecessary consideration of the other assignments of error relating to the judge's charge to the jury.

■ The plaintiffs have argued that, if the court erred in refusing to direct verdicts for the defendant on the 4th Count, the error was harmless since they were by right entitled to verdicts under the first three counts of their declarations. We are unable to find any merit in this argument.

The plaintiffs have not appealed from any judgments on counts 1, 2 and 3 in the two cases, and not having done so cannot

argue that they were entitled to verdicts on these counts of the declarations. If they had desired to raise such a question, they should have appealed from those judgments. Not having done so, they are concluded as to that question.

■ Plaintiffs moved to dismiss these appeals on two grounds,—(1) insufficient bond; and (2) incomplete record. Bonds for $250 were filed in each case. These bonds were sufficient to bring the cases before this court on appeal.

■ The record was sufficient for consideration of the errors assigned. These motions are denied. See Stafford et al. v. Union Bank of Louisiana, 17 How. 275, 15 L.Ed. 101; Jerome v. McCarter, 21 Wall. 17, 22 L.Ed. 515. ·

The judgments of the District Court are vacated, the verdicts set aside and the case is remanded to that court for new trials limited to the Fourth Counts; the appellant recovers costs of appeal.