## PENNSYLVANIA R. CO. v. GROVES.

(Circuit Court of Appeals, Second Circuit. March 14, 1916.)

### No. 156.

1. MASTER AND SERVANT ⟨⟩265(14)—INJURIES TO SERVANT—BURDEN OF PROOF —CONTRIBUTORY NEGLIGENCE.

In an action for personal injuries to a servant, brought in the federal court, contributory negligence is a defense, which the master must prove by a fair preponderance of the testimony.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 893, 908; Dec. Dig. ⟨⟩265(14).]

2. MASTER AND SERVANT ⟨⟩289(29)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

It is not contributory negligence as matter of law for a railroad yard conductor, who was thoroughly familiar with the yard, to stop for a minute and a half on a track conversing with the yardmaster, who was his superior officer, and whose duty it was to regulate the movement of trains in the yard, with his back to an engine which he had a right to suppose would take another track, especially where the signal was set against such engine, so as to require the engineer to proceed with caution, having his engine under such control that he could stop it immediately if danger threatened.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1121; Dec. Dig. ⟨⟩289(29).]

Rogers, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of New York.

Action for personal injuries by Charles N. Groves against the Pennsylvania Railroad Company. Judgment for the plaintiff upon a verdict in his favor for $6,000, and defendant brings error. Affirmed.

On writ of error to review a judgment for $6,045.16 entered upon the verdict of a jury in favor of the plaintiff for $6,000 for injuries sustained by him on April 19, 1914. The action was tried by Judge

Edwin S. Thomas sitting for the Western district of New York at Buffalo. Judgment was entered April 23, 1915.

Frank Rumsey, of Buffalo (H. J. Adams, of Buffalo, of counsel), for plaintiff in error.

Sullivan, Bagley & Wechter, of Buffalo (Joseph A. Wechter, of Buffalo, of counsel), for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The parties will be alluded to hereafter as they appeared in the court below, as plaintiff and defendant. The accident occurred on one of the tracks of the New York Central Railroad Company about 1,000 feet east of the passenger station of that company in the city of Buffalo. In addition to the four main tracks there is a cross-over track upon which the defendant's train, whose locomotive struck the plaintiff, was running just previous to the accident. The defendant's engine and cars were permitted to use these tracks pursuant to an agreement between the two companies. The plaintiff was the yard conductor employed by the New York Central and had been employed in the immediate vicinity of the accident for more than 20 years. He was thoroughly familiar with the yard in question and the time when regular trains were expected to arrive and depart. He knew also when milk trains and local trains were expected to cross or occupy these tracks. In short, the plaintiff was thoroughly familiar with the entire situation.

The Pennsylvania engine which struck the plaintiff had been in the station with a passenger train. The train was then run up on track 3 to a point a little to the east of Louisiana street, where it came to a stop with the engine headed west. Just previous to this time the plaintiff had been attending to his duties as yard conductor and was proceeding easterly when he met the New York Central's assistant yardmaster and the two men engaged in conversation near the tower 52. At this time the Pennsylvania train and a Susquehanna train were both expecting to proceed to the milk platform on the south side of the tracks. The yardmaster had control of the trains and decided which should cross over first, the movement being controlled by the man in the tower.

After meeting at the tower, the plaintiff and the yardmaster stepped over onto the main track No. 1. The two stood there engaged in conversation for about a minute and a half when the plaintiff was struck by the defendant's engine which had taken the cross-over and had turned in on main track No. 1.

[1, 2] The principal defense urged in this court is the alleged contributory negligence of the plaintiff. This is a defense in the federal courts and must be proved as are other defenses by a fair preponderance of testimony. P. & R. Coal & Iron Co. v. Keslusky, 209 Fed. 197, 127 C. C. A. 555. We think that it cannot be said that standing for a minute and a half on track No. 1 was negligence as matter of law. When Moore and the plaintiff stepped on that track there was nothing to indicate that it was or was likely to be a dangerous place. The plaintiff had a right to suppose that the Pennsylvania engine would

take the "Ohio street lead," which was the natural and customary thing to do.

Then, too, the "pot signal" was set against any movement to the west and the plaintiff had a right to rely upon the obligation of any one approaching the place where he stood to proceed with caution, having his engine so under control that he could stop it immediately if danger threatened. There is also a strong presumption to be drawn from the conduct of the plaintiff and Moore. Probably no two men in existence were more thoroughly acquainted with the situation and better qualified to speak than they. For years their daily vocation had been the management and direction of trains at this point. And yet they stepped upon track No. 1 in perfect confidence that no danger could befall them by so doing. Would Moore, who was the superior officer of the two, have chosen this particular point for consultation with the plaintiff unless he was assured that no danger could threaten? In risking his own life at this point he practically said to the plaintiff, "No danger can threaten us here."

We are therefore led to the conclusion that the question of contributory negligence was one for the jury and that their verdict that the plaintiff was not negligent cannot be set aside as unsupported by the evidence.

The judgment is affirmed with costs.

WARD, Circuit Judge (concurring). I think that, even if the plaintiff be held guilty of negligence, his negligence will not prevent him from recovering, because the crew of the engine, which was moving slowly in a railroad yard, could have prevented the accident by the exercise of ordinary care in stopping or blowing the whistle or ringing the bell. Inland Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270.

ROGERS, Circuit Judge (dissenting). I am unable to concur. The plaintiff below was in my opinion clearly guilty of contributory negligence. He was injured in the yards of the New York Central Railroad at Buffalo where he had been employed 21 years. This yard was a very busy place. The towerman who had control of the movements of the trains in the yard estimated the number of trains moving over the cross-over in that yard as 1,600 in the course of eight hours. The plaintiff was asked: "You have got to be on the alert every moment of the time for any engine?" To which he answered: "All the time, and be on the alert for other people besides—there is a lot there for you to look after. It is a very dangerous place there if a man is working there." He was asked: "Engines are coming and going hither and yonder so that it seems like perfect pandemonium unless you are used to it, that is true?" And he answered, "Yes." Asked: "And the only safe way for a man to get along there is to watch out continuously if he is on a track?" He answered: "When you are working, watch out, and watch out for other people, too."

Notwithstanding all this the plaintiff, experienced man that he was, deliberately stood on the main track for a minute and a half at least

talking with an assistant yardmaster and knowing that a train which stood waiting to go west might come over the very track on which he stood if the towerman should so determine it, and yet he stood there with his back to the east and was struck. In my opinion he was as matter of law negligent and his negligence contributed to his injury. Both the engineman and fireman testified that their view of the track in front of the engine was cut off for some distance by the boiler of the engine. The engineman said his vision was cut off for about 65 or 70 feet by the boiler. The engineman and fireman each testified that the bell was ringing all the time. The speed of the train was only 6 or 8 miles per hour. If those in the engine had seen the plaintiff on the track 65 or 70 feet away and then lost view of him because of the obstruction of their vision, it does not follow that they had no right to assume that the plaintiff would get off the track and not remain standing directly in front of the approaching engine.

The fireman testified that just as they were turning from track 3 into the cross-over he saw two men 200 feet or better ahead of the engine, and that when he last saw them they were 100 feet or more ahead of the engine, and that they passed from his view in front of the engine so that the boiler cut off his view; they were moving at right angles to the engine, or, in other words, were moving across the track in front of it; that at the time he last saw them they had commenced to turn into track 1, and that he did not see them again. The engineman testified that as he proceeded down the cross-over he was looking straight ahead of the engine along the track, and of course he did not know whether the engine was to proceed straight ahead into the Ohio street branch or turn in on track 1 until he struck the switch points and the engine commenced to turn; that he did not see the plaintiff any time until after the accident. The engineman was operating his engine in a very busy place, and was obliged to look for signals regulating the movement of his train.

The contributory negligence of the plaintiff prevents a recovery unless his injury resulted from the willful, wanton, or reckless conduct of the defendant. To constitute a willful injury the act must have been intentional, or the act or omission which produced it must have been committed under such circumstances as evinced reckless disregard of the safety of others, as by failure after discovering the danger to exercise ordinary care to prevent impending injury. 29 Cyc. 509.

The distinction is this: That if one who is in the exercise of ordinary care is injured by one who is not in the exercise of ordinary care the latter is liable; but if one who is not in the exercise of ordinary care is injured by one who acts willfully or wantonly the latter is liable, notwithstanding the contributory negligence of the injured party. In one case a mere lack of ordinary care makes the wrongdoer liable. In the other case no liability exists unless the conduct complained of was committed in wanton and reckless disregard of consequences. It is such conduct, if it results in the death of the injured person, as would make the wrongdoer guilty of manslaughter. See Banks v. Braman, 188 Mass. 367, 369, 74 N. E. 594. It was this, I think, that the Supreme Court had in mind in Inland & Seaboard Coast-

ing Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270 (1891), when it held that the contributory negligence of a plaintiff would not prevent him from recovery, if the defendant might by the exercise of reasonable care and prudence have avoided the consequences of the plaintiff's negligence.

The difference between the two kinds of liability, ordinary negligence, creating liability in the absence of contributory negligence, and willful, wanton, and reckless conduct, creating liability notwithstanding the plaintiff's contributory negligence, was not called to the attention of the jury in the charge as originally given. Indeed, the court charged the jury, "If the plaintiff was negligent, and you find from the evidence that this negligence contributed to the accident, he cannot recover, no matter how negligent the defendant was." The court afterwards on the request of counsel, however, charged that plaintiff's contributory negligence would not exonerate the defendant, if it were shown that defendant could by the exercise of reasonable care and prudence have avoided the consequences of its conduct.

If the court had instructed the jury that the plaintiff was as a matter of law guilty of contributory negligence, and that the question for it was to determine whether the defendant's conduct was willful, wanton, or reckless, and if they so found that they should bring in a verdict for the plaintiff and determine the amount of the damages, no error of law would have been committed. But, having submitted to the jury the question of contributory negligence, this court cannot know that the jury reached its verdict because it found that the plaintiff was not guilty of contributory negligence, and therefore the defendant was liable because of its failure to exercise ordinary care, or whether it found that the plaintiff was guilty of contributory negligence, but that defendant was guilty of willful, wanton, and reckless conduct.

I therefore am of the opinion that the judgment should be reversed.